IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:09cv280

DENNIS PATTON,  )
              )
   Petitioner,  )
              )
   vs.         )     **MEMORANDUM OF**
              )     **DECISION AND ORDER**
              )
ALVIN W. KELLER, JR.,  )
Secretary of NCDOC and )
VANESA GILBERT, Captain )
of Henderson County Jail, )
              )
   Respondents.  )
_____ )

**THIS MATTER** is before the Court upon the Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody [Doc. 1]; Respondents' Motion for Summary Judgment [Doc. 10]; and Petitioner's Cross-Motion for Summary Judgment [Doc. 13].

I.  **PROCEDURAL BACKGROUND**

On June 5, 2006, the Petitioner was found guilty following a trial by jury in the Superior Court for Henderson County of trafficking in methamphetamine by possession and transportation, and trafficking in

cocaine by possession and transportation. [Pet. Ex. 2, Doc. 1 at 52-59]. The presiding judge, the Honorable James U. Downs, sentenced the Petitioner to several sentencing terms, totaling 210 to 252 months' imprisonment. [Id.].

Following his convictions, Petitioner appealed to the North Carolina Court of Appeals, arguing in his sole assignment of error that the trial court erred in denying his request for new counsel. The Court of Appeals overruled this assignment of error, concluding that the trial court did not abuse its discretion in rejecting Petitioner's "vague assertions" that counsel was incompetent and unprepared and in relying instead on trial counsel's representation that the defense was prepared to go to trial. State v. Patton, No. COA06-1710, 2007 WL 1893609, at *2 (N.C. Ct. App. Jul. 3, 2007).

On October 8, 2007, Petitioner filed a Motion for Appropriate Relief (MAR) in the Henderson County Superior Court, arguing that the trial court deprived him of his constitutional right to self-representation. [Resp't Ex. 1, Doc. 11-3 at 59]. On October 22, 2007, the Superior Court dismissed Petitioner's MAR as procedurally barred. [Pet. Ex. 4, Doc. 1 at 62].

Petitioner filed a petition for certiorari in the North Carolina Court of Appeals seeking review of the Superior Court's Order denying his MAR.

[Resp't Ex. 1, Doc. 11-4 at 2]. On December 16, 2008, the Court of Appeals affirmed the Superior Court's Order denial of Petitioner's MAR as procedurally barred. State v. Patton, No. COA08-199, 2008 WL 5221598, at *4 (N.C. Ct. App. Dec. 16, 2008). Petitioner filed a petition for writ of certiorari in the North Carolina Supreme Court. [Resp't Ex. 5, Doc. 11-8]. On March 19, 2009, the North Carolina Supreme Court dismissed the petition. State v. Patton, 676 S.E.2d 51 (N.C. 2009). Petitioner filed the present § 2254 petition in this Court on July 23, 2009.

## II. FACTUAL BACKGROUND

Petitioner's case came on for trial on May 30, 2006. [Tr. at 1].[1] At that time, Petitioner through his appointed counsel, Ronald E. Justice, Jr., entered pleas of not guilty as to all charges. [Id. at 5-6]. Before the jury entered the courtroom, Mr. Justice stated that Petitioner wished to address the court. [Id. at 6]. The following colloquy ensued:

> [PETITIONER]: Yes, Your Honor. In the interest of not wasting the courtroom's time, I'm talking about pleading not guilty and all that there, I don't know what this man's talking about. I'm saying, this man just recently started talking to me today. I've been

---

[1]References herein to "Tr. at __" are to Petitioner's trial transcript, the relevant portions of which are attached to the § 2254 Petition as Exhibit 1 [Doc. 1 at 31].

3

> detained in the Henderson County jail for nine months, just received a motion. I'm talking about as far as him representing, Your Honor, I'm talking, the man just recently started Mr. Justice, Mr. Justice just recently started coming to see me like a week ago, and all the sudden he's like, you're going to trial. You're going to plead guilty to this. I've got other cases, other cases, other serious cases that I'm dealing with in the process, same thing. He told me, plead guilty to this here, this here, all this right here. We want, I'm saying, **I'm not too much dissatisfied with his service, but he's incompetent to the case**, Your Honor . . . . I'm talking about, I'm willing to proceed with the case, but honestly - -
>
> THE COURT: You're ready to do what?
>
> [PETITIONER]: It's like, I'm not ready to proceed with this case, Your Honor. . . . I don't too much know what's going on, Your Honor. I'm not going to sit here and lie to you. **If you can just find, just grant me, I'm saying, pull this thing here until you get me another, any court, anybody else. Please. That's the only thing I ask** . . . . I'm not too much caring about postponing my case. **I just need me another legal service, please. That's all I ask.**
>
> THE COURT: All right. What do you say about that, Mr. Justice?

[Id. at 6-8 (emphasis added)]. In response to the court, Petitioner's counsel stated that he had visited Petitioner "usually about once a month as [they have] been working [their] way through the court system on other charges." [Id. at 8]. Counsel further stated that, if Petitioner felt that he could be

4

represented by another attorney, he would "gladly stand aside and provide all work product and materials to that new attorney and assist that new attorney in any way." [Id. at 9]. In response, Petitioner stated again that counsel had not responded to his letters and that he felt that counsel was "just not competent." [Id.].

The court then explained the charges pending against the Petitioner and asked him what he believed to be lacking with respect to those charges. Petitioner responded, "I'm lacking everything on those . . . . [I]t's kind of hard being prepared for a case when you ain't got the evidence presented to you. I just recently got it." [Id. at 10]. The court asked counsel whether he had discussed the evidence with Petitioner, and counsel responded that he had. The court then ordered the jury to be brought in the courtroom. [Id.]. Before the jury came into the courtroom, however, the Petitioner engaged the court as follows:

> [PETITIONER]: Your Honor, can he go ahead and just, **I'll just represent myself then?**
>
> THE COURT: Sir?
>
> [PETITIONER]: Because I'm talking about I'm more scared of him than I am the sentencing. I'm talking about the possibility of getting sentenced by the jury.
>
> THE COURT: **Do you want to represent yourself?**

5

[PETITIONER]: **Yeah.** I'm talking about I ain't got but - - I ain't got nothing. You sitting here and saying - -

THE COURT: First of all, you better settle down.

[PETITIONER]: Yes, sir.

THE COURT: And second of all, **if you want to represent yourself I'll grant you that wish, but I'm going to leave him there with you to at least discuss what to do before you put your foot in a deep hole**.

[PETITIONER]: Your Honor, I'm already in a deep hole. He haven't told me nothing.

THE COURT: Hold the jury.

[PETITIONER]: He hasn't told me nothing, Mr. Downs. That's what I'm sitting here telling you. He hasn't told me nothing. That's what I'm saying. I'm talking about I ain't going to sit here and waste the courtroom's time while - -

THE COURT: **He will remain your counsel through the case. If you want to do the questioning and what not, I'll consider that at such time as when we come to your time to do it.**

[PETITIONER]: **I can't do that.** I don't even know the evidence that's been brought up against me.

THE COURT: Well, he said he discussed it with you.

[PETITIONER]: I mean, he just discussed it with me today. That's my good word; he just discussed it with me today. I ain't got no reason to lie about nothing. I been here nine months. He just discussed it with me

> today. That's my good word. He just discussed it
> with me today.

[Tr. at 10-12 (emphasis added)]. After the court again explained the nature of the Petitioner's charges, Petitioner stated, "[Defense counsel] ain't prepared me for this case here at all. That's what I'm telling you. He ain't prepared me for this at all. All the sudden a week ago he said for this here, we're going to trial." [Tr. at 13]. In response, the court stated, "I've heard enough. Bring in the jury." [Id.]. Defense counsel represented Petitioner throughout his trial. As noted above, the jury found Petitioner guilty as to all charges.

## III. STANDARD OF REVIEW

### A. Standard of Review for Summary Judgment Motions

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As the Supreme Court has observed, 'this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Bouchat v.

7

Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (emphasis in original).  A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citation omitted).

The party seeking summary judgment bears the burden of initially demonstrating the absence of a genuine issue of material fact.  Bouchat, 346 F.3d at 522.  Once the moving party has met its burden, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist.  Id.

> A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.  Furthermore, neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.

Id. (internal citations and quotation marks omitted).

## B. Standard of Review for Habeas Petitions

A federal court cannot grant habeas relief in a case where a statute court has adjudicated a claim on the merits unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary" to clearly established federal law, "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the result reached by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application of federal law" where it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407, 120 S.Ct. 1495. A decision also may constitute an unreasonable application where it "unreasonably extends a

legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. Any factual determinations made by the state court "shall be presumed to be correct," and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. DISCUSSION

In his habeas petition, the Petitioner claims that he was denied the right to self-representation at his trial. [Petition, Doc. 1 at 3]. The Petitioner, however, did not raise this claim in his direct appeal to the North Carolina Court of Appeals. Although the Petitioner did assert this claim in his Motion for Appropriate Relief, the MAR court concluded that this claim was procedurally barred due to the Petitioner's failure to raise the claim on direct appeal. See N.C. Gen. Stat. § 15A-1419(a)(3) (denial of MAR appropriate if "the defendant was in a position to adequately raise the ground or issue underlying the present motion" on a previous appeal "but did not do so").

Under the doctrine of procedural default, a federal court generally is precluded from reviewing the merits of a habeas claim that was found to be procedurally barred based on independent and adequate state grounds. Lewis v. Wheeler, 609 F.3d 291, 308-09 (4th Cir.), cert. denied, 131 S.Ct. 59, 177 L.Ed.2d 1148 (2010). Procedural default, however, is an affirmative defense that the State must raise if it is not to lose the right to assert the defense thereafter. Gray v. Netherland, 518 U.S. 152, 165-66, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). In this case, Respondents have not asserted a procedural default defense to the Petitioner's habeas claim. Accordingly, the Court will proceed to address the claim on its merits.

The Sixth Amendment to the United States Constitution gives a criminal defendant not only the right to the assistance of counsel for his defense, but also the right to represent himself. Faretta v. California, 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Between the right to counsel and the right to self-representation, "the right to counsel is preeminent and hence, the default position." United States v. Singleton, 107 F.3d 1091, 1096 (4th Cir. 1997); see also Penson v. Ohio, 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) ("Of all the rights that an accused person has, the right to be represented by counsel is by far the

most pervasive, for it affects his ability to assert any other rights he may have."). "So important is the right to counsel that the Supreme Court has instructed courts to 'indulge in every reasonable presumption against [its] waiver.'" Fields v. Murray, 49 F.3d 1024, 1028 (4th Cir. 1995) (quoting Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)). Therefore, a defendant who wishes to invoke his right to represent himself and thus waive his constitutional right to counsel must do so "clearly and unequivocally." Id. at 1029 (citations omitted). Requiring a clear and unequivocal demand for self-representation enables a court to "'traverse [the] thin line' between improperly allowing the defendant to proceed *pro se,* thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." Id. at 1028 (citations omitted). It further "prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation." United States v. Frazier-El, 204 F.3d 553, 559 (4th Cir. 2000).

In the present case, the trial court in the MAR found that the Petitioner stated that he was unable to proceed *pro se.* Patton, 2008 WL 5221598, at *2. The North Carolina Court of Appeals affirmed, holding that

the Petitioner did not make a clear and unequivocal request to represent himself, in that he "wavered between requesting new counsel and requesting to proceed *pro se*." Id. at *4. The findings of fact on collateral review are entitled to a presumption of correctness, see Fields, 49 F.3d at 1032, and the Petitioner bears the burden of rebutting this presumption by clear and convincing evidence, 28 U.S.C. § 2254(e)(1).

The Petitioner has failed to rebut the presumption that this factual finding is correct. The record clearly establishes that the Petitioner's request to represent himself was equivocal, at best. The Petitioner initially expressed concern to the trial court that his attorney was unprepared (i.e., "incompetent to the case"), and he requested that new counsel be appointed. [Tr. at 7 ("If you can just find, just grant me, I'm saying, pull this thing here until you get me another, any court, anybody else. Please. That's the only thing I ask. . . ."). Upon questioning Petitioner's counsel and learning that counsel had reviewed the evidence with the Petitioner and was prepared to go forward with the trial, the trial court denied Petitioner's request. [Id. at 10]. The Petitioner then tentatively asked, "can he [counsel] go ahead and just, I'll just represent myself then?" [Id.]. When the court asked the Petitioner whether he wanted to represent

himself, the Petitioner responded, "Yeah." [Id.]. The court indicated that it would grant the Petitioner's request but that counsel would remain so that the Petitioner could consult with him. [Id. at 11]. The court then told the Petitioner that the court would consider allowing Petitioner to "do the questioning and what not" at the appropriate time, to which the Petitioner responded, "I can't do that." [Id.]. The Petitioner then reiterated his complaint that his counsel was not competent because he had not discussed any of the evidence with him. [Id. at 13]. It is apparent from this exchange between the Petitioner and the trial court, when taken in its full context, that the Petitioner primarily was concerned with the adequacy of his representation, and that the Petitioner never made a clear and unequivocal request to waive his right to counsel.

In his § 2254 petition, Petitioner argues that the facts of his case are similar to those in <u>Faretta v. California</u>, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and that the Court should overrule the North Carolina Court of Appeals' decision on that basis.[2] The Petitioner's argument,

---

[2]Petitioner further argues that his case is distinguishable from two North Carolina cases relied upon by the North Carolina Court of Appeals in affirming the denial of his MAR. [Petition, Doc. 1 at 26-28]. Whether the state court misapplied these state cases, however, is irrelevant to determining whether the Petitioner is entitled to federal habeas relief. <u>See</u> 28 U.S.C. § 2254(d)(1) (habeas relief will not be granted unless state court adjudication was contrary to or constituted an unreasonable application of "clearly established *Federal* law," as determined by the United States Supreme Court)

14

however, is without merit. In Faretta, the defendant requested to represent himself well in advance of trial. 422 U.S. at 807, 95 S.Ct. 2525. The evidence indicated that Faretta had represented himself in a previous criminal proceeding, and he indicated clearly that he did not want to be represented by appointed counsel in the present proceeding. The trial judge accepted Faretta's waiver of counsel. Id. at 808, 95 S.Ct. 2525. Weeks later, but still prior to trial, the trial judge without prompting asked Faretta about his ability to represent himself and questioned him specifically about certain rules of evidence. Id. Based upon Faretta's lack of technical legal knowledge, the trial judge determined that his waiver of counsel was not knowing and intelligent, and thus appointed counsel. Id. at 809-10. The judge later rejected Faretta's request to act as co-counsel, and insisted during the trial that the defense be conducted only through appointed counsel. Id. at 810-11. Finding that "Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel," the Supreme Court determined that Faretta was denied his constitutional right to self-representation. Id. at 836.

---

(emphasis added).

Unlike the defendant in Faretta, the Petitioner wavered between his request for new appointed counsel and his request to proceed *pro se*. Because the Petitioner never clearly and unequivocally asserted his right to self-representation, the facts of his case are not similar to and certainly not "materially indistinguishable" from those in Faretta. See Williams, 529 U.S. at 405, 120 S.Ct. 1495. Accordingly, Petitioner's reliance on Faretta is misplaced.

Based on the record, the Petitioner is unable to demonstrate that the state court's denial of this claim constituted an unreasonable determination of the facts or a decision contrary to, or involving an unreasonable application of, Supreme Court precedent. As such, Petitioner's claim must be dismissed.

## V.  CONCLUSION

Having fully considered the pleadings and documents submitted by the Petitioner and the entire record of this matter, the Court finds that it is clear that Petitioner is not entitled to relief on his claim. The Court further finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537

U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong). As a result, the Court declines to issue a certificate of appealability. <u>See</u> Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that Respondents' Motion for Summary Judgment [Doc. 10] is **GRANTED**, and Petitioner's Cross-Motion for Summary Judgment [Doc. 13] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody [Doc. 1] is **DENIED** and **DISMISSED**.

**IT IS SO ORDERED.**

Signed: March 23, 2011

Martin Reidinger
United States District Judge

17